THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIAM J. HAZARD, Appellant.

*Crime — the pledge of property, whose possession the pledgor obtained from the owner for the purpose of selling it to a third person, is larceny.*

Evidence given upon the trial of an indictment for the crime of grand larceny in the second degree, to the effect that the defendant obtained possession of certain jewelry from its true owner under a statement that he had a customer to whom he could sell the same, and upon an agreement that, if he did not sell the jewelry, he would return it to the owner, and that he pawned the jewelry on the same day for $125, is sufficient to warrant a finding that the defendant was guilty of the offense charged under subdivision 2 of section 528 of the Penal Code, in that, having been in the possession, custody and control, as bailee, of the jewelry, he had appropriated the same to his own use by pawning it and receiving the loan made upon it.

The fact that the defendant subsequently gave to the owner of the jewelry a check for the value of the jewelry did not change the nature of the relation which the defendant bore to the property, or make the previous pawning of the jewelry by him any less a crime.

APPEAL by the defendant, William J. Hazard, from a judgment of the Court of General Sessions of the Peace of the city and county of New York in favor of the plaintiff, rendered on the 31st

day of March, 1897, upon the verdict of a jury convicting the defendant of the crime of grand larceny in the second degree.

*Thomas A. Atchison,* for the appellant.

*James D. McClelland* and *Charles E. Le Barbier,* for the respondent.

INGRAHAM, J.:

The appellant was indicted under subdivision 2 of section 528 of the Penal Code as being in possession, custody and control as bailee and trustee of certain goods, chattels and personal property of one Michael H. Hemmendinger, the true owner thereof, to wit, two diamond earrings of the value of ninety-two dollars and fifty cents each, and having, on the 27th day of December, 1895, feloniously appropriated the said goods to his own use, with intent to deprive and defraud said Hemmendinger of the same. Upon the trial it appeared that Hemmendinger, being the owner of the property, called on the defendant, in answer to a note written by the defendant, and then delivered to the defendant two diamond earrings upon the statement of the defendant that he had a customer for the earrings named Newman. The defendant signed a memorandum to the effect that if the earrings were not sold he (the defendant) would return them. There was testimony tending to show that on the same day the earrings were pawned with a pawnbroker for $125; that subsequently, in the month of January, the defendant gave to a person named Kahn the pawn ticket, saying: "Here is a ticket for a pair of earrings; I pawned them at Simpson's alongside the bridge; pawned at $125;" that subsequently the owner of the diamonds called at the pawnshop, saw the earrings called for by the ticket and identified them as the diamond earrings that he had delivered to the defendant under this memorandum agreement before mentioned.

Upon this evidence the court submitted to the jury the question whether upon these facts this transaction was a sale or bailment. "Were these diamonds sold to this defendant or were they merely intrusted to this defendant for a specific purpose? On that question of fact you will determine the question of the guilt or

innocence of this defendant." The court further charged the jury that if they believed that the owner of these earrings delivered them to the defendant upon an express agreement that the defendant was to take them and sell them to Newman, and that if he did not sell them to Newman within a few days, then he (defendant) would return the diamond earrings to the owner, and that if he did sell them to Newman, he was to give the money to the owner, the defendant did not receive the title and was not vested with the title to the diamonds; that he was simply clothed with the possession of these diamonds for a certain and specific purpose; that he had no right whatever to use these diamonds for any other purpose than the specific and limited purpose which was stated by the owner of the diamonds, i. e., to sell them to Newman. The jury having found that the defendant was guilty of grand larceny in the second degree, have found the facts as testified to by the witnesses for the prosecution, and we think the evidence was sufficient to sustain that verdict.

Subdivision 2 of section 528 of the Penal Code provides that a person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, either as bailee, servant, attorney, agent, clerk, trustee, or officer of any person, association or corporation, or as a public officer, or as a person authorized by agreement, or by competent authority, to hold or take such possession, custody or control, any money, property, evidence of debt or contract, article of value of any nature, or thing in action or possession, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof, is guilty of larceny. Here it appears that the defendant obtained the possession of this property from its true owner, under a statement that he had a customer to whom he could sell the earrings, on the 27th day of December, 1895, and upon an agreement that if he did not sell them he would return them to the owner. It also appears from the evidence that upon the same day he received them, instead of selling them or attempting to sell them, he pawned them with a pawnbroker, and received from him the sum of $125. This evidence was sufficient to sustain a finding of the jury that the defendant was guilty, under this section of the Penal

Code, as being in possession, custody and control, as bailee of these diamond earrings belonging to another, had appropriated the same to his own use by pawning them and receiving the amount loaned upon them. Upon pawning these diamonds the defendant was guilty of the crime charged. He had appropriated to his own use the property of another which was in his possession, custody and control, as bailee or agent of the owner. Under the agreement testified to by the witnesses for the prosecution, and whom the jury by their verdict believed, he was only authorized to sell and deliver these diamonds to Newman, and any other disposition of them was an appropriation of the property which he held as agent or bailee, and was a crime under the section of the Penal Code referred to. The defendant testified that he delivered these diamonds to Newman on the day after he received them, but it appeared that the defendant had pawned them the day they were delivered to him. His defense was that he had purchased the diamonds outright; that the transaction between him and the complainant was not a delivery of possession for a specific purpose, but a sale and delivery of the articles to him. That question having been submitted to the jury, their verdict is conclusive. The subsequent giving of the check for the value of the jewelry by the defendant to the complainant did not at all change the nature of the relation that the defendant bore to the property, or make the pawning of the diamonds on the twenty-seventh day of December, the day that the defendant received them, any less a crime. It was the appropriation of this property to his own use, of which he had not the title, but a mere possession or custody as bailee or agent, which constituted the crime, and it is for this appropriation of the property of another that the defendant was convicted. We think, therefore, that the court correctly refused to advise the jury to acquit, and correctly submitted the case to the jury by a charge that was fair to the defendant and preserved all his rights.

The defendant calls our attention to several rulings upon the admission and rejection of evidence. They have been examined, but we think that none of them requires a reversal of the judgment. The witnesses were allowed to testify as to all the facts, and the questions calling merely for the conclusion of the witnesses from those facts were properly sustained.

We think that the defendant had a fair trial ; that there was evidence sufficient to sustain the finding of the jury, and that no error was committed that requires a reversal of the judgment.

The judgment is, therefore, affirmed.

Van Brunt, P. J., Patterson, O'Brien and McLaughlin, JJ., concurred.

Judgment affirmed.

---

Matilda E. Starbuck, Appellant, *v.* The Farmers' Loan and Trust Company, as Executor of the Last Will and Testament of William H. Starbuck, Deceased, Respondent, Impleaded with Matilda E. Starbuck, as Executrix of the Last Will and Testament of William H. Starbuck, Deceased, Defendant.

*Pleading — an allegation that the plaintiff has no adequate remedy at law is not admitted by a demurrer — an executrix having a personal claim against her decedent's estate has an adequate legal remedy at law under section 2731 of the Code of Civil Procedure — jurisdiction of the Supreme Court.*

An allegation in a complaint to the effect that the plaintiff has no adequate remedy at law is merely a conclusion of law, and hence is not admitted by a demurrer interposed to the complaint.

The right of an executrix having a personal claim against the estate of her decedent to establish it before the surrogate upon her final accounting, under section 2731 of the Code of Civil Procedure, affords the executrix a sufficient and adequate remedy at law, and she is confined to this remedy.

*Quære,* whether the Supreme Court has jurisdiction of an action in equity brought by the executrix as an individual against her co-executor and herself, as executrix, to enforce a personal claim against the estate.

Appeal by the plaintiff, Matilda E. Starbuck, from an interlocutory judgment of the Supreme Court in favor of the defendant, The Farmers' Loan and Trust Company, as executor of the last will and testament of William H. Starbuck, deceased, entered in the office of the clerk of the county of New York on the 10th day of November, 1897, upon the decision of the court rendered after a trial at the New York Special Term sustaining the said defendant's demurrer to the plaintiff's amended complaint.

*Artemas H. Holmes,* for the appellant.

*David McClure,* for the respondent.